**MARATHON MANUFACTURING COMPANY, Plaintiff-Appellee,**

v.

**ENERLITE PRODUCTS CORPORATION, Defendant-Appellant.**

No. 84–2436.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1985.

---

**216**

Reising, Ethington, Barnard, Perry & Milton, Owen E. Perry, Troy, Mich., for defendant-appellant.

Vinson & Elkins, W. Ronald Robins, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and RANDALL, and JOLLY, Circuit Judges.

PER CURIAM:

This trademark case was heard before the district court on cross-motions for summary judgment. The only disputed issue was whether the mark "MARATHON 10" used by Enerlite Products Corporation was likely to be confused with the "MARATHON" trademark used by Marathon Manufacturing Company. The district court found that a likelihood of confusion existed and issued a permanent injunction prohibiting Enerlite from using its mark, "MARATHON 10". We affirm.

## I

The Marathon Manufacturing Company (Marathon) manufactures and sells electric batteries under the trademark "MARATHON". Through its corporate predecessor, Marathon has sold batteries under the MARATHON label since 1924. Marathon's principal battery products are nickel cadmium batteries which are technologically complex, relatively expensive, rechargeable batteries manufactured by only three companies in the United States. The majority of Marathon's nickel cadmium batteries are wholesaled to original equipment manufacturers who use them in a variety of products, including airplanes, medical equipment and battery powered consumer devices. Marathon's batteries are also available on the retail market through a national network of distributors, located principally at airports.

Enerlite Products Corporation (Enerlite) was formed in 1980. In late 1982, Enerlite began marketing its MARATHON 10 product which consists of ten 1½ volt nickel cadmium "D" size battery cells electrically interconnected to form a 12 volt battery pack. This battery pack is housed in an opaque plastic case for use as an auxiliary power source for portable video recorders, televisions, power tools and the like. Enerlite does not manufacture nickel cadmium batteries, or any part of the battery pack. It purchases the battery cells from one of Marathon's competitors, and employs others to interconnect the cells and house them in the plastic case that forms the auxiliary power pack. Enerlite retails its products directly to consumers. Enerlite sells three lines of video power packs, MARATHON 10, SPRINT and PRO. Only the MARATHON 10 mark is at issue here.

## II

■ Upon learning that Enerlite was marketing a nickel cadmium battery product under the mark MARATHON 10, Marathon filed suit under the Lanham Act for 1) infringement of federally registered trademarks, 15 U.S.C. § 1114(1); 2) false desig-

nation of origin or false description, 15 U.S.C. § 1125(a); and under common law for 3) trademark infringement; and 4) unfair competition.

As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir.1975). The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 487 (5th Cir. 1971); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 382 (5th Cir.1977). Therefore, each of these causes of action hinges on whether the similarity between the MARATHON and MARATHON 10 marks creates a likelihood of confusion. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.1980); *Kentucky Fried Chicken*, 549 F.2d at 386.

After extensive discovery, both sides filed motions for summary judgment, asserting that no material facts were in dispute, except the ultimate fact of whether the admitted circumstances were likely to cause confusion. The parties do not dispute Marathon's ownership of its marks or its priority of adoption.

■ Although some circuits treat likelihood of confusion as a question of law, this circuit has held that likelihood of confusion is a question of fact which can only be set aside if clearly erroneous. *Amstar*, 615 F.2d at 257–58; *T.G.I. Fridays, Inc. v. International Restaurant Group, Inc.*, 569 F.2d 895, 899 (5th Cir.1978). Although the parties filed cross-motions for summary judgment, this procedure was improper. Summary judgment may not be granted when a genuine issue as to a material fact exists. Fed.R.Civ.P. 56(c). At first blush this error would appear to require reversal.

However, all parties agreed to the fact finding procedures actually followed. They merely persuaded the court to label the procedure improperly.

■ At oral argument, counsel for both Enerlite and Marathon agreed that what really occurred was a submission of the case on the written record, developed after extensive discovery and supplemented with oral argument before the district judge. Despite the label: summary judgment, all parties fully agree that the district court reached a conclusion by making a single finding of fact as to likelihood of confusion based on underlying facts which were either not substantially in dispute or left to the district court to decide from the voluminous record on submission. Because all parties agreed to this procedure, we will look to the substance of the matter and not merely its label. A trial procedure which accomplishes what the parties and court intend does not become erroneous merely because it is misnamed. Such error can be, and is here, harmless. Fed.R.Civ.P. 61.

Our review on appeal then consists of deciding whether the factual finding of likelihood of confusion was clearly erroneous under Fed.R.Civ.P. 52(a). *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir.1979); *Holiday Inns, Inc. v. Holiday Out in America*, 481 F.2d 445, 447 (5th Cir.1973). We find it is not. Rather, ample evidence supports the finding of the district judge.

### III

■ The test for determining likelihood of confusion in a trademark case is well established. In this circuit, likelihood of confusion is determined by evaluating a variety of factors including the type of trademark at issue; similarity of design; similarity of product; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion. *Amstar*, 615 F.2d at 259; *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44,

45 (5th Cir.1975). None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved. *See, e.g., Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1160 (5th Cir.1982) (these seven factors are not the only ones properly considered); *Frostie Co. v. Dr. Pepper Co.,* 341 F.2d 363, 367 (5th Cir.1965) (all relevant evidence should be considered).

Essentially, Enerlite alleges the district court made three errors in concluding its MARATHON 10 mark was likely to cause confusion. First, in determining the similarity of design, the court erroneously focused on the similarity between the words "MARATHON" and "MARATHON 10", rather than the overall dissimilarity between the composite marks or corporate logos used by each company. Second, in assessing the identity of retail outlets and purchasers, the court failed to recognize that the markets for each product are so different that customer confusion would be impossible. Third, the record shows no confusion on the part of actual Marathon customers. Enerlite raises additional points which are either incorporated within the discussion of the above issues or are irrelevant to the central question of whether the district court's finding of likelihood of confusion was clearly erroneous. Because Enerlite has not complained of findings relative to the other factors pertinent to likelihood of confusion as listed above, we do not address those factors.

### A.

Enerlite alleges the district court incorrectly focused on the word "Marathon", rather than the composite marks or corporate logos used by each company. Marathon owns two federal trademark registrations for use on nickel cadmium batteries. One of the trademarks consists of the word "Marathon" printed in slightly stylized rounded block letters:

The other registered mark shows the word "Marathon" used in conjunction with the company's logo:

Marathon also stamps the name MARATHON in plain block letters into the casing of each of its batteries.

Enerlite's MARATHON 10 mark appears on its product as follows:

Enerlite argues that a finding of infringement must be based on a visual comparison of the marks as actually affixed to the goods. Enerlite contends that Marathon does not use its word-only trademark on its batteries, but rather affixes its more distinctive corporate logo to the outside of each battery. Marathon does not dispute this assertion. We therefore accept Enerlite's view that the Marathon corporate logo is the relevant mark on Marathon batteries. Enerlite asserts that the more distinctive logo should be compared to the MARATHON 10 mark, because the logo is the mark the public associates with Marathon batteries in the market place. Enerlite contends a side-by-side comparison of the MARATHON 10 mark with the Marathon corporate logo creates an overall impression so dissimilar the public could not possibly be confused, and that the finding by the district court was clearly erroneous.

Enerlite claims the district court improperly focused on the individual word, "Marathon", featured in both the Enerlite and Marathon marks, rather than on the overall impression created by the marks as viewed in their entirety. Enerlite relies on

numerous Fifth Circuit trademark cases to support its contention that a visual comparison of the competing marks is the determinative test of infringement. *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Ass'n*, 651 F.2d 311, 317–18 (5th Cir. 1981) ("Similarity of appearance is determined on the basis of the total effect ... rather than on a comparison of individual features."); *Armstrong Cork*, 597 F.2d at 502 ("A mark must be viewed in its entirety.... It is the overall impression that counts."); *see also Amstar*, 615 F.2d at 260–61; *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155 (5th Cir. 1982); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir.1980); *World Carpets*, 438 F.2d 482 (5th Cir.1971).

Enerlite misconstrues our cases by overemphasizing the role similarity of design plays in a determination of infringement. It is not the sole or always most important factor in the determination of infringement. Rather, all relevant evidence should be considered. *See Frostie Co.*, 341 F.2d at 367. Similarity of design is but one of the factors used to determine likelihood of confusion and hence, infringement. We need not review each of the cases Enerlite cites; it suffices to say that in each of these cases the determination of trademark infringement revolved around many of the factors previously listed. A combination of these factors led the court to determine whether the competing mark was likely to cause confusion.

█ Of course, the evaluation of the marks themselves is an important consideration, for it is in their similarity that the root of most confusion lies. *Armstrong Cork*, 597 F.2d at 501. We agree with Enerlite that determining similarity of design requires that the court look at the competing marks in their entirety and not merely at individual similar features. *See Sun Banks*, 651 F.2d at 317–18. However, we cannot conclude that under the circumstances of this case it was clearly erroneous to find Enerlite's use of the word

"Marathon" confusingly similar to Marathon's logo.

█ While it is unclear from the record whether the district judge used one or the other or both of Marathon's trademarks in his findings and conclusions, this uncertainty is immaterial to Enerlite's argument on appeal. Regardless of how the judge reached a decision, we reject Enerlite's argument that the word "Marathon" is not an infringing similarity when viewing the marks in their entirety. We agree with the district court and find, in this case, even when comparing the marks side-by-side, the word "Marathon" is likely to cause confusion in the nickel cadmium battery industry. Such a determination is not clearly erroneous. "[S]imilarity of sound as well as appearance may be taken into account...." *Abramson v. Coro, Inc.*, 240 F.2d 854, 857 (5th Cir.1957); *Frostie Co.*, 341 F.2d at 366. "Where the products are closely related, less similarity in the trademarks is necessary to support a finding of infringement." *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980).

## B.

█ Enerlite raises no issue in connection with the similarity of product factor. However, because it is inextricably interwoven with the other factors at issue, we feel compelled to discuss its impact on the decision.

Although Enerlite characterizes the competing products as a consumer video power device versus airplane batteries, the district judge stated the products at issue were nickel cadmium batteries. We cannot disagree with the district judge's view. At the heart of the confusion at issue is the fact MARATHON 10 is a nickel cadmium battery product and advertised as such.

The peculiar nature of nickel cadmium batteries heavily influences the outcome of this case and the potential for confusion despite any dissimilarity in the logos displayed to the public. Nickel cadmium batteries are a highly specialized, expensive product manufactured by only three companies in the United States. In this case,

the dissimilarities in overall design are overshadowed by the fact that purchasers of nickel cadmium battery cells deal with a relatively restricted market both in number of manufacturers and price. That fact makes any similarity in identifying marks more likely to confuse, especially when the similarity lies in identical names. It would seem virtually impossible for any nickel cadmium product sold under the name "Marathon" not to be associated with the Marathon Manufacturing Company, one of only three producers of such batteries. It is not clearly erroneous to conclude that anyone involved in an industry or business using such batteries is likely to be confused. Our holding is not to be understood to say Marathon can so monopolize the term "Marathon" as to preclude its use on any other products, but only that it can preclude such use by others seeking to use the name on nickel cadmium products in that market as it is now comprised.

## C.

■ Enerlite also claims a finding of likelihood of confusion is clearly erroneous because the market for its auxiliary power pack does not overlap with the market in which Marathon's batteries are sold. That Enerlite and Marathon serve essentially different end markets is not disputed. Counsel for Marathon admits his client serves primarily the aircraft industry and original equipment manufacturers, while Enerlite sells to consumers in the retail market. However, direct competition is not necessary to succeed on a claim of infringement.

> Trademark jurisprudence ... has long recognized that the lack of competitiveness is not always dispositive of the question of confusion and hence infringement.... Since the likelihood of a second user's practices adversely affecting the first user's reputation has been recognized as the basis for an actionable wrong, *a fortiori* an action will lie if the mere fact that a second user's presence as a retailer adversely affects the first

user's competitive ability as a wholesaler.

*World Carpets*, 438 F.2d at 488.

The record contains a number of examples of harm which Marathon has suffered and may suffer from the marketing of Enerlite's nickel cadmium batteries under the mark, MARATHON 10.

Kenneth Rubel, a manufacturer of lead acid battery home video accessories in competition with Enerlite, assumed MARATHON 10 was a Marathon battery product and that the Troy, Michigan address on the MARATHON 10 label was a sales or field office of Marathon. Believing Marathon was now a direct competitor in video consumer products, Rubel was unreceptive to a sales call by a Marathon field representative. In addition, Rubel removed Marathon from a list of potential suppliers should he develop a nickel cadmium battery product.

Robert Harper, a sales and marketing manager for Saft Battery Company, one of Marathon's two competing manufacturers of nickel cadmium batteries and the supplier of the battery cells for Enerlite's MARATHON 10, obtained a sample of a MARATHON 10 in connection with his job marketing Saft consumer products. Unaware his employer was supplying the nickel cadmium battery cells, Harper believed the MARATHON 10 was a product of the Marathon Battery Company "simply because the name was the same."

Employees at General Electric, the third manufacturer of nickel cadmium batteries in addition to Marathon and Saft, believed the MARATHON 10 was a product manufactured by Marathon. At the request of the marketing division, the MARATHON 10 was tested by G.E. engineers who regularly test competitors' products. The test results showed this believed-to-be-Marathon battery product performed poorly and was inferior to competitors' products. G.E. disclosed these results to representatives of Radio Corporation of America (RCA) in connection with RCA's proposed purchase of nickel cadmium batteries for its own video products.

Enerlite complains that the depositions of General Electric engineers whose jobs were to test competitors' products do not reflect purchasers under normal market conditions, perceptions and influences. However, discounting General Electric's depositions still leaves substantial proof of confusion from battery distributors and persons in the video equipment business, all actual or potential purchasers within the nickel cadmium battery market. Ample evidence supports the finding of likelihood of confusion.

These representative examples of confusion and harm support the view that direct competition is not necessary to establish likelihood of confusion and hence, infringement. The trial court's finding of likelihood of confusion, despite the fact that these two products serve different markets, was not clearly erroneous.

### D.

The district court also found Marathon proved actual confusion on the part of actual customers. Enerlite raises two complaints regarding this finding by the district court. First, Enerlite contends the confusion factor should be determined by focusing on "the product's typical buyer." *Armstrong Cork*, 597 F.2d at 500 n. 5; *see also Kentucky Fried Chicken*, 549 F.2d at 389 n. 26; *Sun-Maid Raisin Growers of Calif. v. Sunaid Food Products, Inc.*, 356 F.2d 467, 469 (5th Cir.1966). Enerlite makes much of the fact that none of Marathon's proof came from an actual or typical purchaser of Marathon products.

Trademark precedent in this circuit does not limit Marathon to making the narrow showing Enerlite urges. "Trademarks convey to purchasers a variety of information, and when a competitor's use of the same or similar marks interferes with this informational function, trademark infringement is established." *Kentucky Fried Chicken*, 549 F.2d at 389. Contrary to Enerlite's insistence, Marathon need not prove confusion on the part of actual customers. Prior to 1962, § 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1), required confusion, mis-

take or deception by "purchasers as to the source or origin of such goods or services." In 1962, the quoted words were deleted, Act of Oct. 9, 1962, Pub.L. No. 87–772, § 17, 76 Stat. 773, 1962 U.S.Code Cong. & Ad.News at 2850, specifically to allow any kind of confusion in support of a trademark infringement action. *Armstrong Cork*, 597 F.2d at 500 n. 5; *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir.1975). Likelihood of confusion, due to similar trademarks, need no longer be predicated upon the claim that the public may be misled by a similarity between the goods. *Armstrong Cork*, 597 F.2d at 500 n. 5.

Marathon need only prove likelihood of confusion, and the district court found Marathon proved actual confusion which is a more compelling form of likelihood of confusion. *See World Carpets*, 438 F.2d at 489. Our review of the depositions and affidavits does not indicate this finding is clearly erroneous. Marathon has shown uncontroverted proof that persons involved in the nickel cadmium battery industry are likely to be confused. Marathon has shown its reputation or ability to compete in this highly specialized market may be damaged by Enerlite's use of the Marathon name on its nickel cadmium product. Such proof supports the issuance of an injunction.

Enerlite also complains that the district court's finding that "some of [Marathon's] actual customers were confused" is clearly erroneous because none of the proof came from an actual purchaser of Marathon products. Enerlite draws this distinction a bit too close. There is evidence that distributors and buyers of nickel cadmium batteries refused to deal with Marathon because they thought the company had become a retail competitor. The district court could believe that these were "actual customers". That finding is not clearly erroneous. If the finding were error, and we hold it was not, it would be harmless because Marathon need not prove confusion by actual customers.

## IV

The following additional record facts also convince us of the correctness of the equitable injunctive remedy in this case. Enerlite markets a series of three auxillary power packs made of nickel cadmium batteries. Only one of these is delineated by the mark MARATHON 10. The other two lines are marked differently. One is called SPRINT and the other PRO. The MARATHON 10 is designed for the consumer electronics market. SPRINT serves the same market, but is lighter in weight, less expensive and has a shorter life than the MARATHON 10. PRO is a heavy-duty, higher priced battery pack designed for use by professionals in video-electronics. Their marks are as follows:

Enerlite repeatedly points out that each of the three marks is accompanied by the Enerlite company name so as to alleviate confusion. However, in both the SPRINT and PRO lines the Enerlite portion of the mark is the same size as the SPRINT and PRO portions. Neither the word SPRINT nor PRO predominates over the word Enerlite. Both components are equally bold and visible. Only with the MARATHON 10 mark is the word Enerlite markedly diminished in proportion to the MARATHON 10 portion of the mark. MARATHON 10 is much more visible than the smaller Enerlite. Thus, MARATHON 10 could more readily be perceived as a "Marathon" product than as an Enerlite product. By using the diminished word Enerlite and the larger word MARATHON, Enerlite chose not to follow the pattern of markings used on its other two products where Enerlite is the major component of the mark. This action by Enerlite enhanced the inference of unfair competition and an intent to benefit from use of the Marathon name.

Another appropriate consideration stems from the fact Enerlite conducted a trademark search and was told of Marathon's trademark for nickel cadmium batteries. Counsel warned Enerlite that litigation might result from using the MARATHON 10 mark. Despite this actual knowledge of possible infringing activity, Enerlite proceeded with the use of the mark. Enerlite asserts it did so because orders for labels, cartons and promotional literature had been placed using the MARATHON 10 mark as first designed. These considerations do not justify the introduction of a mark so likely to be confusing in this restricted market.

Finally, Marathon did not sit on its rights allowing Enerlite to proceed with the use of the "Marathon" mark unchallenged. *See Armco,* 693 F.2d at 1162. Immediately upon discovering MARATHON 10 existed, Marathon asserted its trademark rights prohibited Enerlite's marketing activity.

The findings of the trial court are not clearly erroneous. The designs and products are sufficiently similar to render the difference in markets almost irrelevant. The actual confusion shown to exist among those making, selling, and using nickel cadmium products clearly shows likelihood of confusion. The trial court acted well within its discretion in issuing a permanent injunction. The judgment appealed from is

AFFIRMED.