United States Court of Appeals,

Fifth Circuit.

No. 90–2054.

MOORE BUSINESS FORMS, INC., Plaintiff–Appellee,

v.

Seh M. RYU, d/b/a CompuRite, Inc., Defendant–Appellant.

May 12, 1992.

Appeal from the United States District Court For the Southern District of Texas.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and PRADO,[*] District Judge.

POLITZ, Chief Judge:

Seh M. Ryu, d/b/a CompuRite, and CompuRite, Inc. (collectively "Ryu") appeal an adverse judgment declaring that they infringed the trademark and common law service mark, and otherwise unfairly competed with Moore Business Forms, Inc. Ryu also appeals an award of attorney's fees. We affirm the judgment on the merits and reverse the award of attorney's fees.

Background

Moore is a national paper goods firm with sales in excess of $1 billion. In 1972 Moore began using the word "Compurite" as a trademark for its product—computer-generated business forms characterized by the simultaneous printing of fixed and variable information. These forms are typically used for promotional or informational mailings and W–2 tax forms. Moore provides, under the Compurite cognomen, related services such as word and data processing, graphic design and layout, mailing, sorting and receiving services, and response analysis. Compurite was federally registered in 1973 for "paper business forms."[1]

---

[*]District Judge, of the Western District of Texas, sitting by designation.

[1]"Business Form" is not defined by the Patent and Trademark Office. As noted by the district court, however, industry usage defines the term as "any material which has been printed or otherwise especially prepared for the primary purpose of facilitating the entry of variable written information by hand or machine according to some predetermined format. Blank paper may be included, especially if it is continuous and has undergone some manufacturing operation, such as

In 1983 Ryu opened a retail store in Houston for the marketing of computer hardware, software, accessories, and related supplies. A search was made of the assumed name records in Harris County, Texas but apparently no check was made of federal registration. Ryu selected the trade name "CompuRite" and recorded it as an assumed name in Harris County. Except for the capitalization of the "R," Moore's trademark and Ryu's trade name are identical.

Moore learned of Ryu's use of CompuRite about 18 months later, at which point it informed Ryu of its prior use of the trademark. There was no response to Moore's first two communications. After receiving a letter in August 1985 from Moore's outside legal counsel, Ryu sought legal advice but did not get a formal legal opinion of non-infringement. Reciprocal attempts at settling the dispute were unsuccessful and the instant action was filed.

The district court found that Ryu infringed Moore's trademark, in violation of 15 U.S.C. § 1114, as well as Moore's common law service mark. The court also found statutory, 15 U.S.C. § 1125(a), and common law unfair competition. Injunctive relief was granted. No damages were awarded but the court ordered Ryu to pay attorney's fees and expenses, 15 U.S.C. § 1117(a). Ryu timely appealed.

Analysis

Ryu maintains on appeal that the trial court erred in its findings that: (1) Moore's relationship with the Compu–Rite Corporation in California was a limited consent-to-use and not a naked license as Ryu contended; (2) there was a likelihood of confusion caused by Ryu's use; and (3) Moore had established a common law service mark.

1. *Naked License Theory*

---

punching or perforating to facilitate manual entries, machine writing, or use after writing." We agree with that definition.

Ryu concedes use of the name CompuRite for its computer business but maintains that Moore orally licensed the use of the trademark "Compurite" to a California company—Compu–Rite Corporation—without establishing any provision for quality control or supervision. Ryu asserts that because of the extension of this type of naked license, Moore is now barred from enforcing its trademark.

Compu–Rite Corporation is engaged in the sale of computer printer ribbons. It was incorporated in 1974, less than a year after Moore registered its trademark. Moore promptly objected to Compu–Rite Corporation's use of the Compurite name, but eventually reached an oral agreement allowing Compu–Rite Corporation to use the name, but only in connection with the sale of computer printer ribbons. Moore has never had any ongoing supervision or control over the production or sale of these ribbons.

A trademark owner may grant a license and remain protected provided quality control of the goods and services sold under the trademark by the licensee is maintained. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113 (5th Cir.1991), *cert. granted in part,* —— U.S. ——, 112 S.Ct. 964, 117 L.Ed.2d 130 (1992); *Denison Mattress Factory v. Spring–Air Co.,* 308 F.2d 403 (5th Cir.1962). Without adequate control of the licensee, a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark. *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368 (5th Cir.1977); *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.,* 486 F.2d 114 (5th Cir.1973). Because a finding of insufficient control essentially signals involuntary trademark abandonment and works a forfeiture, however, the proponent of a naked license theory "faces a stringent standard" of proof. *Taco Cabana,* 932 F.2d at 1113 (citing *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir.1963)). *See also Sheila's Shine,* 486 F.2d at 124 (failure to supervise a licensee for over ten years was not construed as an abandonment of the entire trademark). It must be noted that there need not be formal quality control where "the particular circumstances of the licensing arrangement

[indicate] that the public will not be deceived." *Taco Cabana,* 932 F.2d at 1121. On the other hand, there is no control requirement when a trademark owner consents to another party's defined usage of the trademark.

Ryu contends that the oral agreement between Moore and Compu–Rite Corporation constituted a license as a matter of law because computer ribbons are within the category of business forms to which Moore's trademark applies, thus constituting infringing uses. Even if computer ribbons are business forms, such limited use is not necessarily infringing. Ryu blurs the distinction between the likelihood-of-confusion standard and the mere overlap of product lines. The district court found a consent-to-use, and not a naked license, as the proper categorization of the relationship between Moore and Compu–Rite Corporation. This finding is adequately supported by the record and is not clearly erroneous. Ryu has not carried its burden of proof that a naked license existed.

2. *Likelihood of Confusion*

Likelihood of confusion is also a finding of fact reviewable under the clearly erroneous standard. *Marathon Mfg. Co. v. Enerlite Products Corp.,* 767 F.2d 214 (5th Cir.1985). We have enumerated several specific factors to be considered when determining likelihood of confusion: the type of trademark at issue, that is, the strength of the trademark; degree of similarity between the two marks; similarity of products; identity of retail outlets and purchasers; identity of advertising media utilized; defendant's intent; and actual confusion. *Roto–Rooter Corp. v. O'Neal,* 513 F.2d 44 (5th Cir.1975); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591 (5th Cir.1985).

The district court carefully applied the *Roto–Rooter* factors seriatum, detailing the relevant evidence. Ryu insists that in doing so the district court erred. Our review of the record compels the conclusion that the trial court's finding of the likelihood of confusion is not clearly erroneous. In affirming this finding we are mindful of the premise that "none of these factors by itself is dispositive of the likelihood-of-confusion question, and different factors will weigh more heavily from case to

case depending on the particular facts and circumstances involved." *Marathon Mfg.*, 767 F.2d at 218.

a. *Type of Trademark*

Moore's trademark is sufficiently strong, particularly among potential customers of the parties' goods and services. Compurite is a suggestive mark that has been in use now for nearly 20 years. *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n,* 651 F.2d 311 (5th Cir.1981) (suggestive marks which subtly connote something about the service or product are protected without proof of secondary meaning). The trademark has been advertised nationally through a variety of media. The single instance of third-party use in California does not detract from the relative strength of Moore's trademark.

b. *Degree of Similarity*

The two marks in question are identical in spelling and pronunciation. Ryu insists that the marks are dissimilar because of the use of a capital "R" and its stylization. While it is true that "similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features," the two marks in question visually are very similar, *Sun Banks of Fla.,* 651 F.2d at 317–318, and audibly are identical, *Fuji Photo,* 754 F.2d at 597 (auditory similarity is an important factor when determining likelihood of confusion).

c. *Similarity of Products*

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Exxon Corp. v. Texas Motor Exchange, Inc.,* 628 F.2d 500, 505 (5th Cir.1980). The district court determined that Ryu's products were "similar or at least related to Moore's goods." This finding was based on the two aspects in which the businesses overlap, Ryu sells paper products and forms which fit the categorization of business forms, and advertised the ability to produce business forms of the type which Moore produces. In essence, Ryu offered a do-it-yourself version of Moore's product.

d. *Identity of Retail Outlets and Purchasers*

Dissimilarities between the retail outlets "lessen the possibility of confusion, mistake, or deception." *Id.* at 505 (quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 262 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)).  The district court found that although Moore does not use retail sales outlets, there was a considerable overlap between the purchasers and sales techniques of the two firms.  In particular, the court considered the face-to-face sales calls made by both corporations aimed at large corporate and other entities in Texas.  In some cases the two companies made sales presentations to the very same customers.

e. *Identity of Advertising Media*

There was some overlap in the advertising methods employed by Ryu and Moore.  Although Ryu primarily advertised in general circulation newspapers, the district court noted that the advertisements were subject to being read by the customers of both.  Further, both companies advertised by printing and distributing brochures and flyers delivered to customers.

f. *Intent*

Although much is made of intent herein, we find that factor of little relevance for we find no credible evidence that Ryu intentionally adopted the mark in order to derive undue benefit from Moore's reputation.  We are further mindful that "[g]ood faith is not a defense to trademark infringement." *Fuji Photo,* 754 F.2d at 596.

g. *Actual Confusion*

Evidence of actual confusion is often the best evidence of likelihood of confusion. *Id.* at 597 (citing *Chevron Chemical Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 704 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982); *Exxon Corp.,* 628 F.2d at 506; *Roto–Rooter Corp.,* 513 F.2d at 46).  The district court found several incidents of actual confusion involving a perceived affiliation or sponsorship between the parties or their products.  The

record contains evidence of instances in which both customers and employees were confused by Ryu's use of the mark and had inquired as to whether the two companies were affiliated. *See Fuji Photo,* 754 F.2d at 597 (while little proof of actual confusion will support a finding of likelihood of confusion, an overwhelming amount of proof is necessary to refute such proof).

### 3. *Common Law Service Mark*

The district court found that Moore's nationwide use of its trademark Compurite had established a common law service mark which distinguished Moore's services from those of others. The service component of the trademark included a variety of services in connection with computer-generated business forms. The court further found that Ryu's use of the mark was likely to cause confusion as to the source of the services. The court therefore held that Ryu had infringed Moore's common law service mark. (The mark subsequently was registered.)

For the foregoing reasons we find neither factual nor legal error in the trial courts ruling on the merits and issuance of injunctive relief. Ryu also contends on appeal that the trial court erred in awarding attorney's fees. We find merit in that contention.

### Attorney's Fees

The district court determined that Ryu's continued use of the trademark after repeated notice was deliberate, thereby justifying an award of attorney's fees. Under section 35 of the Lanham Act the court may award attorney's fees to the prevailing party in "exceptional" cases. 15 U.S.C. § 1117(a). At the time of its ruling the district court did not have the advantage of our recent ruling in *Texas Pig Stands v. Hard Rock Cafe Int'l., Inc.,* 951 F.2d 684 (5th Cir.1992).

We review an award of attorney's fees pursuant to section 1117(a) under an abuse-of-discretion standard. *Texas Pig Stands; Taco Cabana,* 932 F.2d at 1127.

While the term "exceptional" is not defined in section 1117(a), legislative history suggests its parameters. The Senate Report states that "the remedy should be available in exceptional cases, i.e., in infringement cases where the acts of infringement can be characterized as "malicious,' "fraudulent,' "deliberate,' or "willful.' " S.Rep. No. 1400, 93rd Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Admin.News 7132, 7133 (1974). Although courts have differed as to the type of conduct that is sufficient to meet the congressional standard of "exceptional,"[2] we recently have recognized that the phrase is most frequently "interpreted by courts to require a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud." *Texas Pig Stands,* 951 F.2d at 697. Applying this standard to the present case, we are persuaded that the record does not support an award of attorney's fees.

The evidence does not support the proposition that Ryu had actual knowledge of Moore's trademark and, with that knowledge, intentionally adopted its mark. The trial court obviously was much influenced by the continued use of the mark and the expansion of business using the disputed mark after receiving notice from Moore and its counsel.

We are not persuaded that an award of attorney's fees may be based solely on the continuing use of a trademark which was adopted without notice. In a similar case, the Sixth Circuit held that

---

[2]*Compare Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 952 F.2d 44 (3d Cir.1991) ("a district court must make a finding of culpable conduct on the part of the losing party, such as bad faith, fraud, malice, or knowing infringement, before a case qualifies as "exceptional' "); *Takecare Corp. v. Takecare of Oklahoma, Inc.,* 889 F.2d 955, 957 (10th Cir.1989) (recognizing that some degree of bad faith is necessary); *Readers' Digest Ass'n v. Conservative Digest, Inc.,* 821 F.2d 800, 808 (D.C.Cir.1987) ("a court must find willful or bad faith infringement by the defendant in order to award attorney's fees to the plaintiff."); *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1169 (11th Cir.1982) ("An award of attorneys' fees ... should be made only in exceptional circumstances and on evidence of fraud or bad faith.") *with Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1476 (11th Cir.1991) (the interplay of section 1117(a) and section 1117(b) "demonstrates that a showing of intent or bad faith is unnecessary to ... seek remedies pursuant to § 1117(a)."); *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 123 (8th Cir.1987) (for defendant, "[b]ad faith is not a prerequisite to a Lanham Act fee award."); *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 771 F.2d 521, 526 (D.C.Cir.1985) (defendant need not show that plaintiff brought an action in bad faith to obtain attorney's fees—"something less than "bad faith' ... suffices to mark a case as "exceptional' ").

a defendant's reasonable continuation of litigation does not make a case exceptional. *WSM, Inc. v. Wheeler Media Services, Inc.,* 810 F.2d 113 (6th Cir.1987). The defendant in *WSM, Inc.* had innocently adopted the plaintiff's trademark. By September of 1982 the defendant was aware of the plaintiff's prior claim to the mark and asserted likelihood of confusion but continued to litigate until May of 1984, at which time the trial court ruled in favor of the plaintiff. Plaintiff then requested attorney's fees dating back to September of 1982. The *WSM, Inc.* court held that the circumstances surrounding the case were not "exceptional" because (1) the defendant's conduct in adopting the mark was not malicious, fraudulent, deliberate, or willful, and (2) the defendant was justified in continuing litigation since ownership of the mark was still in question. Unreasonable post-adoption conduct rising to the level of bad faith could be evidence of the exceptional nature of a case, but the reasonable continuation of litigation should not automatically be such.

Ryu's continued use of the mark after notification by Moore should not, without more, be considered exceptional. When there is no evidence of bad faith in the adoption of the mark, all post-notification conduct must be analyzed to determine if the defendant's continuing actions were unreasonable and amounted to bad faith. Continued use after notice is not the equivalent of adoption of the trademark with notice. As noted, in the present case there is no evidence that Ryu attempted to gain benefit or advantage by using Moore's trademark. Further, there is no indication that Moore suffered actual economic damages from Ryu's infringing activities. *See Texas Pig Stands,* 951 F.2d at 697 n. 23 (while lack of damages does not prohibit a court from finding a case exceptional, "such a finding is an important circumstance to consider."). During the period between the time that Ryu received notice of the competing trademark claim and the filing of suit, the parties engaged in reasonable settlement negotiations. While Ryu's arguments for non-infringement ultimately were not persuasive, they were not frivolous.

Conclusion

For these reasons we AFFIRM the district court's judgment with respect to the trademark and

common law service mark infringement and the federal and common law unfair competition claims.

We REVERSE the order awarding attorney's fees.

AFFIRMED IN PART, REVERSED IN PART.