**INTERSTATE BATTERY SYSTEM OF AMERICA, INC., Plaintiff,**

**v.**

**Rex W. WRIGHT and Interstate Battery System of Southern Missouri, Inc., Defendants.**

**Civ. A. No. 3:89–CV–2045–X.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 21, 1993.

Norman Luther Gundel, John Freeman Booth, David L. Joers, Gerald G. Crutsinger, Crutsinger, Booth & Ross, Dallas, TX, for plaintiff.

Arch M. Skelton, Law Office of Arch M. Skelton, Dallas, TX, Jerry L. Reynolds, Jerry L. Reynolds & Associates PC, Springfield, MO, for defendants.

### MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

NOW before the Court is Plaintiff's Motion For A Partial Summary Judgment With Respect To Plaintiff's Counterfeiting, Trademark Infringement, Unfair Competition, And Contract Claims, And On The Issue of Injunctive Relief, filed on March 2, 1992, as well as Defendants' response to that motion and Plaintiff's reply to the response. Pursuant to the analyses below, the Court determines that Plaintiff demonstrates its entitlement to summary judgment on the issues it raises, except for its sworn account and guaranty claims.

This suit arises from a distributor relationship between Plaintiff, a marketer of electric storage batteries, and the defendants, a corporation that was an authorized distributor of Plaintiff's products in parts of Arkansas and Missouri ("the corporate defendant" or "IBS–SM") and an individual who was the owner and manager of the corporate defendant. Plaintiff alleges that

the defendants intentionally misbranded batteries, which were neither produced nor authorized by Plaintiff, with Plaintiff's trademarks and then marketed those misbranded batteries to retailers as products genuinely produced by Plaintiff. Defendants supposedly accomplished this unauthorized distribution by using trucks also labeled with Plaintiff's marks and driven by persons wearing uniforms bearing Plaintiff's marks. Defendants supposedly commingled these misbranded products with Plaintiff's genuine batteries and caused the commingled batteries to be displayed on racks bearing Plaintiff's marks. Upon discovering Defendants' conduct, Plaintiff filed this action and terminated the distributorship. Pursuant to the distributorship agreement, Plaintiff accelerated the debt due on Defendants' inventory, which had been supplied to Defendants interest free, and foreclosed on the security interest that it had maintained in that inventory. There remains some question, though, as to whether Plaintiff credited the amounts it claims it is owed with the value of inventory that it repossessed. Pursuant to this Court's order, the United States Marshal seized a number of mislabeled batteries at Defendants' place of business as well as at the business locales of Defendants' retail distributors.

Plaintiff moves for partial summary judgment, requesting that the Court determine Defendants' liability for treble damages, attorney fees, prejudgment interest and costs on Plaintiff's counterfeiting, trademark infringement and unfair competition claims, liability for damages, attorney fees, interest and costs regarding Plaintiff's contract claims, and that the Court grant permanent injunctive relief from further acts of counterfeiting, trademark infringement and unfair competition. Plaintiff also seeks an accounting of Defendants' profits *per* authority implicit in 15 U.S.C. § 1117.

The movant in a summary judgment context must show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Slaughter v.*

*Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). The rules allocating the burden of proof guide a court in a summary judgment analysis, *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir.1991), and such allocation depends on the burden of proof that would obtain at trial. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 150 (5th Cir.1991). In this instance, the movant, Plaintiff, would bear the burden of proof at trial on the issues that it asserts in its motion and must therefore come forward with a quantum of evidence that establishes "beyond peradventure all of the essential elements of the claim[s]" it asserts. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried its burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988). When the movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir.1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits and other competent evidence,[1] "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The exis-

---

1. *See* FED.R.CIV.P. 56(e).

tence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment as a matter of law. FED.R.CIV.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

Remembering the summary judgment context in which the analyses occur, the Court first addresses Plaintiff's infringement claim and then turns to its counterfeiting action. Thereafter, the Court turns its attention to the claim for false designation including the common law claims for infringement and unfair competition. The Court then focuses on Plaintiff's contract claims and thereafter on the issue of permanent injunctive relief. Finally, the Court addresses the propriety of an accounting.

## I.

Trademark infringement rests on the notion that a particular use of a registered trademark is likely to cause confusion, 15 U.S.C. § 1114(1)(a),[2] and because trademark cases often involve line drawing in areas of which the points of distinction are inherently indistinct, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), the United States Court of Appeals for the Fifth Circuit has reduced the trademark inquiry to two basic questions: Whether the plaintiff has a protectable right in its mark, and, if so, whether there is infringement as judged by the likelihood of confusion. *Security Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1298 (5th Cir.1985).

Plaintiff's trademarks at issue, INTERSTATE, POWER VOLT, EURO and AMERITRON, are all registered trademarks. Attached to the Affidavit of Norman E. Miller are copies of the registration certificates for these marks. A certificate of registration is *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark. 15 U.S.C. § 1057(b). Defendants proffer nothing to assail such a *prima facie* showing, and the Court therefore concludes that Plaintiff's marks are protectable and moves on to the next stage of the analysis.

The likelihood of confusion test focuses on whether a defendant's use of a plaintiff's trademark would likely create confusion in the minds of potential buyers as to the source, affiliation or sponsorship of the parties' products. *Oreck Corp. v. U.S. Floor Sys.*, 803 F.2d 166, 170 (5th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). To determine likelihood of confusion, one considers a variety of factors, including the strength of a trademark at issue, similarity of design, similarity of product, identity of retail outlets and purchasers, identity of advertising media used, the defendant's intent and actual confusion. *Soweco, Inc.*, 617 F.2d at 1185. These are the so-called "digits of confusion" criteria. The list is not exhaustive and other factors may be considered. *Conan Properties v. Conans Pizza*, 752 F.2d 145, 149 (5th Cir.1985). Proof of actual confusion is unnecessary; rather, the likelihood of confusion is the determinative factor, and this issue is one of fact. *Id.* at 1186. None of these factors by itself is dispositive; different factors

**2.** Section 1114 provides in part as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. shall be liable in a civil action by the registrant....

will weigh heavier from case to case depending on facts and circumstances involved. *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985). A plaintiff may prevail on the question of likelihood of confusion although he is not supported by a majority of the digits. *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159 (5th Cir.1982).

In determining the strength of a mark, the Court looks to such factors as the length of time in which the marks have been in the marketplace and the extent to which they have been advertised. *See Moore Business Forms v. Ryu*, 960 F.2d 486, 490 (5th Cir.1992). Plaintiff, a nationwide marketer of batteries, has been in that business since 1953. (Miller Aff. ¶ 10). During only the last two years, Plaintiff has spent in the neighborhood of $17 million to advertise its trademarked products nationwide. (*Id.* at ¶ 15). Presently, Plaintiff has about 300 distributors and approximately 165,000 retail dealers throughout the United States. (*Id.* at ¶¶ 6, 8). Based on these facts, the Court concludes that Plaintiff's marks at issue are strong, particularly among potential battery customers.

Regarding similarity of design, the Court must not view marks in isolation, but rather must look at the marks in their entirety, not merely at individual similar features. *Oreck Corp.*, 803 F.2d at 171; *Armstrong Cork Co. v. World Carpets*, 597 F.2d 496, 502 (5th Cir.1979), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). It is clear that the marks that Defendants used were not just similar to Plaintiff's marks; they were the identical marks. Batteries found in Defendants' possession, and in the possession of retailers to whom Defendants had supplied batteries, that had not originated from Plaintiff were labeled with Plaintiff's marks, plain and simple. (Scarborough Aff. *passim*). This finding militates strongly toward a finding of infringement.

The third digit involves similarity of product. The greater the similarity between the products and services, the greater the likelihood of confusion. *Moore*

*Business Forms*, 960 F.2d at 490; *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 505 (5th Cir.1980). The Court is guided in this analysis by the overarching principle that a trademark infringement inquiry focuses on whether a defendant's use of a plaintiff's trademark would likely create confusion in the minds of potential buyers as to the source, affiliation or sponsorship of the parties' products. *Oreck Corp.*, 803 F.2d at 170. Plaintiff markets batteries under its marks. Defendants affixed Plaintiff's marks to *batteries.* As with the similarity of design analysis above, the product was not just similar, it was identical.

The fourth digit concerns the identity of retail outlets and purchasers. Dissimilarities between retail outlets lessen the possibility of confusion, mistake or deception. *Moore Business Forms, Inc.*, 960 F.2d at 490. Plaintiff's genuine batteries were commingled with mislabeled batteries, all of which were distributed to the same retailers through the same channels of distribution. (Scarborough Aff. at ¶ 7). Purchasers would not have been able to differentiate between a genuine Interstate battery and a battery mislabeled with one of Plaintiff's marks, and even Defendants' retailers unwittingly maintained that mislabeled batteries purporting to be Interstate batteries actually were the genuine article. (*Id.* at ¶¶ 6-7). These facts militate strongly toward a finding of infringement.

The fifth digit concerns similarity in modes of advertising. Because this case deals with counterfeiting, it does not involve two similar products that may have competing advertising campaigns. Instead, it appears as though similarities in modes of advertising would stem from the benefit misbranded batteries would receive from Plaintiff's advertising of its own genuine products. As noted above, Plaintiff has expended a significant amount of money to advertise its product. Although it does not appear as though Defendants engaged in an active advertising campaign, Defendants' employees answered the corporate defendant's telephone "Interstate batteries" (Coleman Statement at 10); De-

fendants' route truck drivers wore uniforms bearing the word "Interstate" on them (Hicks Statement at 5) and Defendants' route drivers placed batteries—both genuine and bogus Interstate batteries—on Interstate, Euro and Ameritron display racks at retail establishments. (Wright Dep. Aug. 22, 1989 at 69). Understood in light of the overarching principle guiding the Court's analysis—likelihood of confusion—the analysis under this fifth digit counsels toward a finding of infringement because it is likely that customers would be confused as to whether they are purchasing genuine Interstate batteries or batteries incorrectly labeled "INTERSTATE" when the mislabeled looks like the genuine for which Plaintiff advertises.

▇▇▇▇▇ A likelihood of confusion can be found as a matter of law solely on the basis of a defendant's intent, the sixth digit, to derive benefit from the plaintiff's trademark. *Amstar Corp. v. Domino's Pizza,* 615 F.2d 252, 263 (5th Cir.1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Defendants' employees were placing INTERSTATE labels on batteries that they clearly knew were not Interstate batteries. (Parsons Dep. at 10; Thomas Dep. at 9). These acts were done with the knowledge and consent of, and at the direction of, Defendant Wright. (Thomas Dep. at 16). It is therefore clear that Defendants intentionally appropriated Plaintiff's marks.

▇▇▇▇▇ Proof of actual confusion, the seventh digit, is often the best evidence of a likelihood of confusion. *World Carpets v. Dick Littrell's New World Carpets,* 438 F.2d 482 (5th Cir.1971). Retail dealers to whom Defendants supplied batteries believed that they were selling genuine Interstate batteries when in fact they were selling both genuine Interstate batteries and mislabeled batteries. (Scarborough Aff. at ¶ 9). The fact that these retailers were confused regarding genuine and mislabeled batteries is highly probative of likelihood of confusion in the marketplace generally because retail dealers are less likely to be confused than average consumers. *Berkshire Fashions v. Sara Lee Corp.,* 725 F.Supp. 790 (S.D.N.Y.1990), *aff'd,* 904 F.2d 33, (2d Cir.1990). This finding also militates strongly toward a finding of likelihood of confusion.

▇▇▇ Based on the foregoing criteria, the Court concludes that there has been infringement as judged by the likelihood of confusion.

## II.

▇▇▇ In order for Plaintiff to prevail on its counterfeiting claim, it must show that Defendants infringed a registered trademark in violation of 15 U.S.C. § 1114(1)(a) and also that they "intentionally us[ed] a mark ... knowing such mark ... is a counterfeit mark...." 15 U.S.C. § 1117(b).[3]

---

**3.** Section 1117 provides as follows: ·

(a) Profits; damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing.damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not

exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.
(b) Treble damages for use of counterfeit mark
In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(A) of this title or section 380 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in

The Court has determined that Defendants infringed registered marks in violation of 15 U.S.C. § 1114(1)(a). It is also clear that Defendants intentionally used the marks in question. The analysis therefore focuses on whether Defendants used the marks knowing that they were counterfeit.[4]

Plaintiff and the corporate defendant, by Defendant Wright, executed a Confidential Distributor Agreement on September 16, 1985, in which the parties agreed that Plaintiff would "sell the following products to Distributor [the corporate defendant] for resale, subject to the terms and conditions of this Agreement: Storage batteries ("Merchandise")." (Miller Aff.Ex. 19 at ¶ 3.A). The Agreement further provides that "Interstate grants Distributor a personal, nonexclusive, nontransferable, limited right ... to sell, advertise and promote the Merchandise under all tradenames or trademarks which Interstate may own...." (*Id.* at ¶ 4). The Agreement clearly contemplates that Defendants' right to use Plaintiff's trademarks applies to the batteries that Plaintiff would sell to the Defendants—not to other batteries that Defendants might buy elsewhere and then affix Plaintiff's marks to. However, Defendants attached Plaintiff's marks to batteries that they had not purchased from Plaintiff pursuant to the Agreement; Plaintiff's investigator discovered examples of these misbranded batteries at Defendants' retailers. (Scarborough Aff. at ¶ 15). Defendants therefore had knowledge that the batteries to which they affixed Plaintiff's marks were not Plaintiff's batteries and that their acts contravened the license granted in the Agreement. The corporate defendant goes so far as to admit in its answer, albeit a begrudging admission, that "its employees used certain stickers or labels acquired from Plaintiff and affixed such labels or stickers to ... batteries not manufactured by authorized manufacturers of Plaintiff...." (Separate Answer Def. Interstate Battery System to Pl.'s First Am.Compl. at ¶ 4). It is clear, then, that Defendants used Plaintiff's marks knowing that they were counterfeit; Defendants are therefore liable for trademark counterfeiting.

### III.

▮▮▮ Next in Plaintiff's litany of causes come those for false designation of origin under 15 U.S.C. § 1125(a) and common law causes for trademark infringement and unfair competition. Ordinarily, the same set of facts enabling a plaintiff to recover under Section 1114 will enable recovery under Section 1125. *Marathon Mfg. Co. v. Enerlite Prods. Corp.,* 767 F.2d 214, 217 (5th Cir.1985). Additionally, the analysis would be the same for Plaintiff's common law causes of action. *Boston Professional Hockey Ass'n v. Dallas Cap and Emblem Mfg.,* 510 F.2d 1004, 1010 (5th Cir.1974), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). The Court's analysis above is therefore equally conclusive of these issues.[5]

section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

4. "Counterfeit mark" means "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office ... whether or not the person against whom relief is sought knew such mark was so registered; or a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of

[this chapter] are made available...." 15 U.S.C. § 1116(d)(1)(B). Additionally, "counterfeit" is defined as follows: A "counterfeit" is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark. 15 U.S.C. § 1127.

5. Lest confusion creep into the inquiry, the Court notes that Defendant Wright is personally liable for the acts of counterfeiting, trademark infringement and unfair competition because he personally participated in and directed the occurrence of the acts giving rise to these causes of action. *See Mead Johnson & Co. v. Baby's Formula Serv.,* 402 F.2d 19, 23 (5th Cir.1968).

To carry this point further, the Court also recognizes that Wright and the corporate defendant are jointly and severally liable for counterfeiting, trademark infringement and unfair

## IV.

■ In addition to its tort-like infringement causes of action, Plaintiff invites the Court to grant summary judgment in its favor on its contract claims. Specifically, the contracts that once formed the basis of Plaintiff's and the Defendants' relationship are the Confidential Distributor Agreement (Miller Aff.Ex. 19), the Credit and Security Agreement (*Id.* Ex. 20) and the Guaranty (*Id.* Ex. 21) that Defendant Wright executed. As explained above, IBS–SM had a contractual duty to use Plaintiff's marks in relation to batteries that Plaintiff sold to IBS–SM; the corporate defendant breached this duty and therefore breached this contract. Additionally, the Distributor Agreement provides that "Distributor agrees ... [n]ot to infringe, harm, or in any way diminish Interstate's rights in its trademarks and tradenames...." (*Id.* Ex. 19 at ¶ 10.-C). IBS–SM's failure to live up to this agreement, because of its infringement, constitutes an additional breach of the Distributor Agreement.

■ Plaintiff has also pleaded a cause of action for recovery on a sworn account. (Pl.'s First Am.Compl. at ¶¶ 76–79). In order to recover on this cause of action, a plaintiff must demonstrate that there was a performance of services and that the amount of the account is "just," which means the prices charged are agreed to or that the charges are usual, customary or reasonable. *Thorp v. Adair & Myers,* 809 S.W.2d 306, 307 (Tex.App.–Houston [14th Dist.] 1991, no writ). There is no dispute that merchandise was sold and delivered. The price for these goods was "agreed to"—established in the Distributor Agreement. (Miller Aff.Ex. 19 at ¶ 3.A). The amounts claimed remain outstanding. (Hodges Dep. at 80–81). However, an issue of material fact exists regarding whether Plaintiff credited the amount it

claims is due with the value of the inventory that it repossessed. Therefore, summary judgment is inappropriate on this issue.

■ The third instrument in the trilogy that once formed the basis of Plaintiff's and Defendants' relationship was the Guaranty that Defendant Wright executed. In this instrument, Wright guaranteed "the prompt payment at maturity of any and all indebtedness or other liability ... which Borrower [the corporate defendant] may now or at any time hereafter owe to [Plaintiff], together with interest and collection costs...." (Miller Aff.Ex. 21 at 1). To recover on its guaranty claim, Plaintiff must establish that Wright signed the Guaranty, that Plaintiff is the legal owner and holder of the Guaranty and that a sum certain is due and owing on the Guaranty. *Resolution Trust Corp. v. Crow,* 763 F.Supp. 887, 891–92 (N.D.Tex.1991). Because the Court concludes that summary judgment is inappropriate on Plaintiff's sworn account claim, the Court likewise concludes that summary judgment is inappropriate on the guaranty claim. A genuine issue of material fact exists regarding the amount owed on the sworn account, and Plaintiff therefore fails to establish "a sum certain" regarding the Guaranty.

## V.

Plaintiff moves the Court for permanent injunctive relief pursuant to 15 U.S.C. § 1116.[6] The Court remembers that it granted preliminary injunctive relief by instrument entitled "Preliminary Injunction" filed on August 24, 1989, and determines that Plaintiff is entitled to permanent injunctive relief pursuant to Section 1116, which will be entered by separate order.

competition since the doctrine of joint tortfeasors applies to these torts. *Smithkline Beckman Corp. v. Pennex Prods. Co.,* 103 F.R.D. 539, 540 (E.D.Pa.1984); 2 J. McCarthy, Trademarks and Unfair Competition, § 25:3A at 246–47 (2d ed. 1984).

**6.** That section provides in pertinent part as follows:

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title. 15 U.S.C. § 1116(a).

## VI.

 Finally, Plaintiff prays for "an accounting of all receipts, income and/or profits received by IBS–SM or WRIGHT (a) from the sale of any products bearing any of PLAINTIFF's marks or any reproduction, counterfeit, copy or imitation of PLAINTIFF's marks and (b) from the sale of any products resulting from unfair competition with PLAINTIFF." (Pl.'s First Am.Compl. at ¶ 103). The law provides that a court shall enter judgment for three times the defendant's profits or the plaintiff's damages, whichever is greater, together with a reasonable attorney fee for infringement consisting of intentionally using a mark knowing that it is counterfeit. 15 U.S.C. § 1117(b). The court may in its discretion award prejudgment interest on the amount. *Id.* The Court therefore concludes that Plaintiff is entitled to three times the greater amount of its damages or Defendants' profits together with a reasonable attorney fee.[7]

An accounting serves two purposes: remedying unjust enrichment and deterring future infringement. *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir.1980). The Court concludes that an accounting in this case would serve both of these purposes, and the Court finds that an accounting is mandated by its finding under Section 1117(b) pertaining to the greater of three times profits or damages. Because of the egregiousness of Defendants' conduct, the Court also concludes that Plaintiff is entitled to prejudgment interest.

## VII.

Based on the foregoing, the Court concludes that Plaintiff has established its entitlement to summary judgment as a matter of law on the issues it raises in its motion, except for its claims on the sworn account and on the guaranty. These is-

sues, as well as the actual amounts that Plaintiff should be awarded remain for trial.

SO ORDERED.

---

**7.** The Court additionally notes that Plaintiff is entitled to recover a reasonable attorney fee pursuant to the Credit and Security Agreement. (Miller Aff.Ex. 20 at ¶ 12.E). The corporate defendant's breach of the Distributor Agreement constitutes default under the Credit and Security Agreement, which entitles Plaintiff to attorney fees. (*Id.* at ¶ 11).

This case would also constitute an exceptional case as contemplated by 15 U.S.C. 1117(a), thereby entitling Plaintiff to a reasonable attorney fee.