**PHILIP MORRIS USA, INC.,** Plaintiff,

v.

**William W. LEE et al.,** Defendants.

No. EP–05–CV–490–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 28, 2006.

Bruce A. Koehler, Carl H. Green, Mounce, Green, Myers, Safi & Galatzan, P.C., El Paso, TX, John C. Ulin, Los Angeles, CA, Kalai Lau, Samuel R. Watkins, Heller Ehrman LLP, Seattle, WA, for Plaintiff.

Robert A. Skipworth, Attorney at Law, Corey W. Haugland, James & Haugland, P.C., El Paso, TX, for Defendants.

Felipe Castaneda, El Paso, TX, pro se.

## ORDER DENYING DEFENDANT RAUL MARTINEZ III'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED PETITION FOR FAILURE TO STATE A CLAIM

MARTINEZ, District Judge.

On this day, the Court considered (1) Defendant Raul Martinez III's ("Martinez") "Motion to Dismiss Plaintiff's Second Amended Petition for Failure to State a Claim," filed on September 6, 2006; (2) Plaintiff Philip Morris USA, Inc.'s "Opposition to Defendant Raul Martinez III's Motion to Dismiss Plaintiff's Second Amended Petition," filed on September 21,

2006; (3) Defendant's "Reply to Plaintiff's Opposition to Defendant Raul Martinez III's Motion to Dismiss Plaintiff's Second Amended Petition," filed on September 27, 2006; and (4) Plaintiff's "Sur–Reply to Defendant Raul Martinez III's Motion to Dismiss Plaintiff's Second Amended Petition," filed on October 13, 2006 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion to Dismiss should be denied for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Virginia corporation with its principal place of business in Virginia. Pl.'s Second Am. Compl. ¶ 14. Martinez is an individual who resides in Texas. *Id.* ¶ 19. At all relevant times, Martinez served as the Vice President of Guerra's International Traders of El Paso, Inc. ("Guerra's"). *Id.*

Plaintiff is the registered owner of the Marlboro trademark and the Marlboro Roof Design Label trademark, which it uses in connection with its various tobacco products. *Id.* ¶ 6. Plaintiff alleges that Martinez, through Guerra's, "arranged for the importation of a large commercial shipment of roughly 980 master cases of counterfeit Marlboro brand cigarettes into the United States." Pl.'s Resp. ¶ 1. Plaintiff's specific allegations will be reviewed below.

On June 5, 2006, Martinez filed a motion seeking dismissal of Plaintiff's First Amended Complaint as to Martinez for its failure to state a claim upon which relief could be granted. The Court granted the motion on July 27, 2006, dismissing the claims against Martinez but granting Plaintiff leave to amend its complaint. Plaintiff filed its Second Amended Complaint on August 14, 2006. Martinez's instant motion contends that Plaintiff has still failed to state a claim upon which relief may be granted, and requests that

the Court dismiss the claims against him. In the alternative, Martinez requests that the Court order Plaintiff to replead its complaint with a more definite statement.

## II. RULE 12(b)(6) MOTION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). However, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). A motion to dismiss under Rule 12(b)(6) should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). When considering a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir.2003). Accordingly, the Court must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1969), *quoted in Gregson*, 322 F.3d at 885.

A pleading may be subject to dismissal under Rule 12(b)(6) for either of two reasons. "First, the law simply may not afford relief on the basis of the facts alleged in the complaint.... Second, regardless of whether the plaintiff is entitled to relief, the pleadings may be so badly framed that the plaintiff is not entitled to a trial on the merits." *Walker v. S. Cent.*

*Bell Tel. Co.*, 904 F.2d 275, 277 (5th Cir. 1990). Martinez's motion challenges the adequacy of the Second Amended Complaint primarily on the second ground.[1] Therefore, this motion must be evaluated in light of the liberal "notice pleading" requirement of Federal Rule of Civil Procedure 8 ("Rule 8"). *Id.* Pursuant to Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Under this standard, "a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Gen. Star. Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 950 (5th Cir.1999).

### B. Analysis

Accepting Plaintiff's well-pleaded facts as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court is of the opinion that Plaintiff's Second Amended Complaint adequately states claims upon which relief may be granted.

### 1. Factual Allegations

Martinez contends that "Plaintiff has alleged only one fact against Martinez, that a company in which Martinez was an officer ... ordered cigarettes from Kagro, Inc." Def.'s Mot. to Dismiss ¶ 7. Martinez claims that Plaintiff fails to allege any connection between Martinez and the other alleged conspirators or the importation of the seized cigarettes. *Id.* ¶ 11. That is not the case; Plaintiff has alleged that Martinez was directly involved in an elaborate agreement to arrange for the importation of a substantial quantity of counterfeit Marlboro cigarettes.

Plaintiff's specific allegations can be summarized as follows. Plaintiff owns the federally-registered Marlboro marks, which it uses in connection with its sale and marketing of Marlboro brand cigarettes. Pl.'s Second Am. Compl. ¶¶ 6–8. Martinez, in an attempt to purchase a substantial quantity of counterfeit cigarettes that could be resold at a significant profit, allegedly entered into an arrangement to import counterfeit Marlboro cigarettes through intermediaries including Motohiro "Mickey" Miyagi and Raul Castaneda. *Id.* ¶¶ 29–32. Martinez had imported counterfeit goods several times in the past, including three shipments of counterfeit cigarettes that had been seized by Customs. *Id.* ¶¶ 39–40. Therefore, Martinez and his intermediaries attempted to conceal their involvement in the sale by paying William Lee ("Lee") and his company, Kagro, Inc. ("Kagro"), to be the initial purchaser and importer, thus ensuring that only Lee and Kagro would be listed on the shipping documents. *Id.* ¶ 41. Upon Lee's receipt of the cigarettes in El Paso, ownership and possession of the cigarettes would be transferred to Martinez. *Id.* ¶¶ 41–42. To execute this plan, on approximately September 2, 2003, Martinez and Guerra's issued a purchase order to Kagro for 11,760 master cases of Marlboro cigarettes, to be received in twelve

---

1. In his Motion to Dismiss, Martinez exclusively attacks the insufficiency of the factual allegations in the Second Amended Complaint. *See, e.g.,* Def.'s Mot. to Dismiss ¶ 12 ("There is nothing connecting Martinez to the importation of the seized cigarettes in this case.") In his Reply to Plaintiff's Response to his Motion to Dismiss, Martinez raises a new argument that Plaintiff's claim under 15 U.S.C. § 1124 must fail because that section creates no private cause of action. Insomuch as this argument speaks to the first reason in the *Walker* inquiry, it will also be addressed below.

shipments over the course of one year. *Id.* ¶ 32; *id.*, Ex. 4 (Purchase Order). On December 1, 2003, 978 master cases of cigarettes bearing the Marlboro marks were seized at the Port of Houston. *Id.* ¶ 32. Customs officials determined the cigarettes to be counterfeit. *Id.* Given the counterfeit marks, the subsequent sale of those cigarettes to consumers would likely have confused or deceived consumers who have come to recognize the well-known Marlboro marks. These facts, along with the reasonable inferences that may be drawn from them in Plaintiff's favor, allege that Martinez arranged for the importation of a substantial quantity of counterfeit Marlboro cigarettes, which he intended to distribute to consumers who would mistake them for legitimate Marlboros. The Court is of the opinion that these allegations provide a sufficient basis for each of the claims raised by Plaintiff.

### 2. Plaintiff's Causes of Action

Plaintiff alleges the following six causes of action: (1) infringement of registered trademarks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and trademark and trade dress infringement, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) unlawful importation of goods bearing infringing trademarks, in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124; (4) unlawful importation of goods bearing registered trademarks, in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a); (5) infringement of registered marks, in violation of Texas

Business and Commerce Code § 16.26; and (6) unfair competition, in violation of Texas state common law. Pl.'s Second Am. Compl. ¶ 5.

■ In his Motion to Dismiss, Martinez focuses almost exclusively on Plaintiff's failure to allege a factual basis for which the Court could determine that Martinez had committed civil conspiracy. The Court does not understand the Second Amended Complaint to be asserting a claim of civil conspiracy, but instead sees the Second Amended Complaint as alleging that Martinez himself has committed violations of the Lanham Act, the Tariff Act, and Texas statutory and common law.[2]

#### a. First and Second Causes of Action

Plaintiff's first two causes of action arise under the Lanham Act, and relate to the "use in commerce" of counterfeit markings on the seized cigarettes. Section 32 of the Lanham Act, 15 U.S.C. § 1114, sets forth a cause of action for the infringement of a registered trademark when an individual "use[s] in commerce any ... counterfeit ... of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Similarly, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for the false designation of origin and trademark when an individual "uses in commerce any ... sym-

---

**2.** Nonetheless, even if the Second Amended Complaint does raise a claim for civil conspiracy, the Court believes that Plaintiff has sufficiently alleged that claim. A claim for civil conspiracy is subject only to the "notice pleading" requirement of Rule 8(a), and the Fifth Circuit has recognized that "pleading of the evidence is surely not required and is on the whole undesirable," as "the nature of

conspiracies often makes it impossible to provide the details at the pleading stage." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631–32 (5th Cir.1999). As discussed above, Plaintiff alleges that Martinez was in agreement with the other defendants to import counterfeit Marlboro cigarettes, and offers several details as to how the agreement was structured between the defendants.

bol ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods." *Id.* § 1125(a)(1).

 Martinez contends that Plaintiff has failed to allege such violations of the Lanham Act. According to Martinez, Plaintiff has not alleged that Martinez ever possessed the counterfeit cigarettes, and thus Martinez could not have "used" the cigarettes in commerce. Def.'s Reply ¶¶ 8–9. The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127, para. 16. A mark on goods is used in commerce when "it is placed in any manner on the goods ... and the goods are sold or transported in commerce." *Id.* The Lanham Act defines "commerce" to include "all commerce which may lawfully be regulated by Congress," *id.*, para. 3, which of course includes the importation of goods from abroad, U.S. CONST. art. I, § 8. Courts construing these provisions of the Lanham Act have held that liability attaches to individuals responsible for the importation of counterfeit goods, even when the goods are seized at a port of entry and not distributed further. *See, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D.Cal. 2003). While Martinez is correct in stating that Plaintiff fails to allege that Martinez ever actually possessed the cigarettes, Def.'s Reply ¶ 9, the act of purchasing the cigarettes was itself a significant act of commerce, even without their subsequent resale. In alleging that Martinez arranged for the importation of the cigarettes that were seized at the Port of Houston, in full knowledge of their counterfeit nature, Plaintiff has set forth a basis for its claims that Martinez used the counterfeit marks in commerce, thereby invoking Sections 32 and 43(a) of the Lanham Act.

### b. Third and Fourth Causes of Action

Plaintiff's third and fourth causes of action raise claims of unlawful importation under the Lanham Act and the Tariff Act. Section 42 of the Lanham Act, 15 U.S.C. § 1124, and Section 526(a) of the Tariff Act, 19 U.S.C. § 1526, prohibit the importation of goods bearing registered trademarks without the consent of the owner of such marks. Martinez raises two arguments in opposition to the sufficiency of the Second Amended Complaint regarding these claims.

 Martinez first contends that 15 U.S.C. § 1124 creates no private cause of action. But while 15 U.S.C. § 1124 does not itself provide a remedy to the holders of infringed trademarks, 15 U.S.C. §§ 1116 and 1117 authorize injunctive relief and damages, respectively, for a "violation of any right of the registrant of a mark registered in the Patent and Trademark Office." Several courts have interpreted these provisions as creating a private cause of action under 15 U.S.C. § 1124. *See, e.g., Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir.1992); *Summit Tech., Inc. v. High–Line Med. Instruments Co.,* 922 F.Supp. 299, 308 (C.D.Cal.1996).

 Second, Martinez contends that Plaintiff has not alleged a violation of either provision because the cigarettes were seized by Customs officials before entering the country, and thus cannot be considered to have been imported. Def.'s Reply ¶ 10. This argument also must fail. The importation of goods does not require that the goods clear inspection by Customs. *Castworld Prods., Inc.,* 219 F.R.D. at 497; *United States v. Watches, Watch Parts, Calculators & Misc. Parts,* 692 F.Supp. 1317, 1321 (S.D.Fla.1988); *United States v. Boshell's Estate,* 14 Ct. Cust. 273, 275 (Ct.Cust.Appls.1922) ("Imported merchandise is merchandise that has been brought

within the limits of a port of entry from a foreign country with intention to unlade, and the word 'importation' as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached."). In fact, the authority of Customs officials to seize nonconforming goods shipped through a port of entry is derived from these same provisions barring the importation of such goods. *See* 19 U.S.C. § 1526(b) ("Any such merchandise imported into the United States in violation of the provisions of this section shall be subject to seizure and forfeiture for violation of the customs laws."). As detailed above, Plaintiff has alleged that Martinez was directly involved in arranging for the importation of the cigarettes that were seized at the Port of Houston. Plaintiff's claims do not depend upon a showing that Martinez himself ordered the cigarettes from a foreign supplier, or that the shipment went beyond Customs officials. Plaintiff has adequately alleged that Martinez arranged to import the cigarettes, and that Lee and Kagro were involved merely to shield the ultimate purchaser, Martinez, from the suspicion of Customs officials.

c. Fifth and Sixth Causes of Action

Plaintiff's two remaining claims allege violations of Texas law: that Martinez infringed on registered marks, in violation of Texas Business and Commerce Code § 16.26, and that Martinez's conduct amounted to unfair competition, in violation of Texas common law. Section 16.26 provides that:

> a person commits an infringement if, without the registrant's consent, he (1) uses anywhere in this state a reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with selling, offering for sale, or advertising goods or services when the use is likely to deceive or cause confusion or mistake as to the

> source or origin of the goods or services; or (2) reproduces, counterfeits, copies, or colorably imitates a mark registered under this chapter and applies the reproduction, counterfeit, copy, or colorable imitation to a label, sign, print, package, wrapper, receptacle, or advertisement intended to be used in selling, leasing, distributing, or rendering goods or services in this state when the use is likely to deceive or cause confusion or mistake as to the source or origin of the goods or services.

TEX. BUS. & COM. CODE ANN. § 16.26 (Vernon 2002). Martinez contends that because he never *received* the cigarettes, he could not have "used" them in Texas. Def.'s Reply ¶ 12.

■ The Court is of the opinion that the Second Amended Complaint adequately sets forth a claim under this cause of action, as Plaintiff has alleged that Martinez was responsible for the counterfeiting of the Marlboro marks with the intent to use such marks in reselling the cigarettes. Plaintiff has also alleged that such use of counterfeit marks would likely deceive or cause confusion among consumers. Plaintiff need not demonstrate that Martinez actually possessed the cigarettes in order to make out a cause of action arising under § 16.26(2).

■ As to Plaintiff's claim of unfair competition in violation of Texas state common law, Martinez argues in his reply brief that Plaintiff's failure to adequately plead a violation of federal trademark law also makes Plaintiff's claim under Texas common law inadequate. Def.'s Reply ¶ 13. Martinez cites *Keane v. Fox Television Stations, Inc.*, which stated that "[t]he issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law." 297 F.Supp.2d 921, 937 (S.D.Tex.2004) (quoting *Sport Supply*

*Group, Inc. v. Columbia Cas. Co.,* 335 F.3d 453, 461 (5th Cir.2003)). Since the Court has already determined that Plaintiff's claims under federal law have been adequately pleaded, Martinez's argument here also fails. Furthermore, the Court believes that the Second Amended Complaint adequately alleges a violation of unfair competition, independent of the claims under federal trademark law. A Texas common law claim of unfair competition based on the unauthorized use of a trademark requires a showing that a "plaintiff's use of its trade name has acquired a secondary meaning, and that the similarity or use of the mark or name is such that the defendant's use would be likely to confuse the public." *Graham v. Mary Kay Inc.,* 25 S.W.3d 749, 754 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Plaintiff has alleged that Martinez's actions constituted such a violation. It claims that the Marlboro marks are well known to consumers nationwide. *See id.* ("A secondary meaning means that a trademark identifies a particular producer in the mind of the public."). And by claiming that Martinez's actions created "a strong likelihood of confusion among consumers, who expect that cigarettes sold in packages bearing the Marlboro mark will be genuine Philip Morris USA product," Pl.'s Second Am. Compl. ¶ 1, Plaintiff has sufficiently alleged that because of Martinez's actions "the public is likely to be deceived or confused," *Line Enters., Inc. v. Hooks & Matteson Enter., Inc.,* 659 S.W.2d 113, 117 (Tex.App.-Amarillo 1983, no pet.). Therefore, the Court believes that the Second Amended Complaint sets forth a claim of unfair competition.

### 3. Sufficiency of Plaintiff's Evidence

Finally, Martinez claims that Plaintiff's evidence is insufficient to support its claims. Martinez points to a purchase order attached to the Second Amended Complaint. That purchase order states the terms of Martinez's agreement to buy cigarettes from Kagro, and includes a provision by which Martinez is only required to purchase the cigarettes if they successfully pass Customs inspections. *See* Pl.'s Second Am. Compl., Ex. 4 (Purchase Order). Martinez contends that the inclusion of that term in the purchase order indicates that he was attempting to purchase legal cigarettes from Kagro. Def.'s Mot. to Dismiss ¶ 10. Plaintiff responds that this merely establishes a factual dispute over Martinez's intent in purchasing the cigarettes, as including the term in the purchase order may simply have been an attempt to protect Martinez from liability should the counterfeit cigarettes actually be seized. Pl.'s Resp. ¶ 21. The Court agrees with Plaintiff, insomuch as the meaning of the purchase order is a factual dispute best left to trial on the merits. As stated above, in a Rule 12(b)(6) motion, the Court is required to draw all reasonable inferences that can be drawn from the complaint in favor of Plaintiff. For the limited purposes of this motion, the Court accepts Plaintiff's allegations as true, and believes it is reasonable to infer that Martinez knew that the cigarettes were counterfeit and was merely attempting to protect himself from liability in the event of their seizure.

For these reasons, the Court believes that Plaintiff has adequately set forth allegations that, if true, would entitle it to relief under each of the six causes of action raised in the Second Amended Complaint. Therefore, the Court must deny Martinez's claims under Rule 12(b)(6).

## III. RULE 12(e) MOTION

Martinez presents his Motion to Dismiss under Rule 12(b)(6), and attacks the Second Amended Complaint only for its failure to state a claim upon which relief can be granted. In his prayer for relief, how-

ever, Martinez requests that the Court, "in the alternative, enter an order requiring the Plaintiff to replead its causes of actions with specificity." Def.'s Mot. to Dismiss ¶ 12. The Court construes this as a motion under Federal Rule of Civil Procedure 12(e) ("Rule 12(e)").

■ Rule 12(e) allows the Court to require a party to provide a more definite statement of its claims "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." FED. R. CIV. P. 12(e). The rule specifically requires that the moving party's "motion shall point out the defects complained of and the details desired." *Id.* Martinez offers no discussion or legal analysis in support of his Rule 12(e) claim, instead focusing his Motion to Dismiss entirely on the Rule 12(b)(6) claim, and therefore his Rule 12(e) claim must fail. Furthermore, under the liberal "notice pleading" requirement of Rule 8, "a motion for a more definitive statement is generally disfavored, and is used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." *Frazier v. Se. Penn. Transp. Auth.*, 868 F.Supp. 757, 763 (E.D.Pa.1994). As discussed above, Plaintiff's Second Amended Complaint sets forth detailed allegations of conduct by Martinez and the other named defendants that gave rise to this cause. The Second Amended Complaint is not "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," FED. R. CIV. P. 12(e), and thus Martinez's Rule 12(e) motion must be denied.

## IV. CONCLUSION

In sum, Martinez has failed to demonstrate that Plaintiff's allegations in its Second Amended Complaint do not set forth claims upon which relief can be granted. Furthermore, Plaintiff's allegations have been pleaded in sufficient detail to allow Martinez to file a responsive pleading. Therefore, the Court must deny Martinez's Motion to Dismiss under both Rules 12(b)(6) and 12(e).

Accordingly, **IT IS ORDERED** that Defendant Raul Martinez III's "Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim" (Docket No. 80) is **DENIED**.